## Kostenbader Trust

*George R. Eves*, for accountant.

*G. Fred Steinrock*, for exceptant.

MUTH, P. J., May 11, 1964.—Berks County Trust Company, successor to Colonial-Northeastern Trust Company, has filed its account as trustee for Jennie Pauline Kostenbader. The trust was created by decedent, August F. Kostenbader, in his last will and testament. He died testate September 7, 1932. By his last will and testament he provides in substance that the balance of his estate be held in trust by the Colonial-Northeastern Trust Company, predecessor to Berks County Trust Company, the income to be paid quarterly to Jennie Pauline Kostenbader, wife of decedent, for life with power and direction to the said trustee to exercise its discretion to pay out of the prin-

cipal of the said trust fund such sum or sums as it may deem necessary for the care and comfort of the said wife of decedent; upon her death the corpus of the trust shall be held in further trust for the issue of the settlor until the youngest shall arrive at the age of 21 years when the trust shall be distributed to them in equal shares per stirpes; in the event of a failure of issue, the settlor directs that the trust be held in further trust for Herman A. Kostenbader, a brother, Dorothea Marie Kostenbader, a niece, Herman Carl Kostenbader, a nephew, and August Frederick Kostenbader, another nephew, for life, the income to be paid to them or to the survivor of them, and, upon the death of the survivor, the principal to be distributed in equal shares to three named charities.

The accountant has filed no previous account in this trust. The fund presently accounted for was awarded to the accountant by adjudication of this court dated May 23, 1936. The occasion of the filing of the present account is stated to be the request of the life tenant, Jennie Pauline Kostenbader, and also the lapse of time since the inception of this trust in 1936. Jennie Pauline Kostenbader is living and the trust continues.

The account as filed discloses that the accountant has not exercised its discretion in distributing to the widow of the settlor any portion of the principal of the trust. The account as stated covers the period from May 23, 1936, the date of the original distribution to the accountant, to November 1, 1963, supplemented by a statement of additional receipts and disbursements for the period ending December 26, 1963.

Jennie Pauline Kostenbader, widow and life tenant of the within trust, has filed certain objections to the trustee's account. The objections are not numbered and are not specific, and also include reference to facts not found in the testimony as well as argumentative material. In order to simplify the objections, we have

attempted to exclude all reference to any material other than the specific question involved in each case, which pertains to the failure of the trustee to designate as income certain items of the receipts which are included in the account as principal. These objections follow:

1. Life tenant objects to the inclusion of $1,140 of the proceeds of the sale of a $3,000 Interstate Bridge Company 4 Percent Bond. The trustee has designated all of the receipts from this sale as principal.

2. Life tenant objects to the failure of the trustee to account as income for certain gains in the sale of a bond of the Western Maryland Railroad Company. This exception has been withdrawn.

3. Life tenant contends that a portion of the proceeds of the sale of certain preferred stock of the Sunray Oil Company are income. This objection has been withdrawn.

4. Life tenant contends the sum of $498.35, proceeds of the redemption of a $500 bond of Thayer-West Point Hotel Corp. is income.

5 to 17, inclusive. These objections are based upon the action of the trustee in regarding as principal rather than as income certain stock dividends, rights to purchase stock, stock splits, and proceeds of the sale of stock. These objections are not set forth in detail but will be discussed individually as we proceed in this opinion.

As stated in Catherwood Trust, 13 Fiduc. Rep. 610, page 611:

"The law with respect to stock dividends up to and including 6% has recently been enunciated by the Supreme Court of Pennsylvania in Pew Trust, 411 Pa. 96.

"In an earlier decision relating to the same trust estate, Pew Trust, 362 Pa. 468, the Supreme Court had then held that the beneficiary (life tenant) had

a vested interest not only in ordinary stock dividends but also in extraordinary stock dividends, and that to apply the Principal and Income Act to the trust would be unconstitutional. The Supreme Court stated that 'the provisions of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS 3471, and the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS 3470, are unconstitutional when applied retroactively to trusts created prior to their enactments.'

"Thereafter, a series of decisions reaffirmed the constitutional right of a life tenant in a trust created prior to the Act to both ordinary stock dividends and an apportionable part of extraordinary stock dividends: Crawford Est., 362 Pa. 458; Steele Est., 377 Pa. 250; Jones Est., 377 Pa. 473; Warden Trust, 382 Pa. 311; Cunningham Est., 395 Pa. 1.

"However, in Catherwood Trust, 405 Pa. 61, the Supreme Court of Pennsylvania overruled those cases and declared to be constitutional what, in the prior decisions, it had held to be unconstitutional.

"In the Catherwood decision, which abolished *in futuro* the long established Pennsylvania Rule of Apportionment of extraordinary stock dividends, the Supreme Court stated the following:

" 'While we have never held that ordinary small stock dividends should be considered as income payable to the life tenant, we have not held to the contrary; our prior decisions dealt with stock dividends, extraordinary in nature. If a total stock distribution for the current year is payable at the rate of 6% or less of the corporation's outstanding shares before such distributions were made such distribution in stock of the distributing corporation should be treated as income.' (At pp. 77-78)

"In *Pew Trust*, 411 Pa. supra, the Supreme Court held as follows:

'To summarize: We hold (1) that as to wills of persons dying before and inter vivos trusts created prior to the effective date of the Principal and Income Act of 1945, a gift of income or net income included small stock dividends of 6% or less, unless the testator or settlor clearly expressed a contrary intent . . .' "

The will of testator discloses that the widow, Jennie P. Kostenbader, is the primary object of his concern and chief beneficiary of the trust created by his will. In all such situations it is of course elementary that the polestar in every trust and in every will is the settlor's or testator's intent and that intent must prevail. Such intent must be ascertained from the language and scheme of the entire will and, in order to ascertain the actual intent of a testator, the court must place itself in his armchair and consider not only the language and scheme of the instrument, but all the facts and circumstances with which he was surrounded. Numerous pronouncements to this effect have been made by appellate courts of this Commonwealth as will appear at greater detail in Pew Trust, 411 Pa. 96.

As noted the accountant had allocated certain receipts to principal of the trust rather than to income, and such allocation is the reason for the objections filed to this account. It should be noted that at the time the allocations were made by the accountant the determinations as to principal and income were made by the accountant in good faith and in accordance with its understanding of the requirements and provisions of the laws of Pennsylvania with reference to the allocation of principal and income between a life tenant and the remaindermen of a trust. However, this portion of the law has been so beset by difficulties, confusions, alterations, and repetitions that it has become very difficult, almost impossible, for a trustee to know definitely what the existing law may be. In fact, the in-

tricacies and obscurities of this particular field of the law have been described by one student of the subject as "not being worthy of an adult mind." However, in view of the decision of the Supreme Court of Pennsylvania herein referred to pertaining to the distribution of stock dividends received by a trustee and in the light of a further decision of the said court found in Pew Trust, 398 Pa. 523, pertaining to the allocation of a stock split, said opinion being in part as follows * . . .

We make the following disposition of the objections filed to the within account:

The trustee received from the estate of decedent, on June 6, 1936, a bond from the Interstate Bridge Company. It is this bond that is referred to in exception number 1. On July 17, 1936, the trustee exchanged the original bond for a bond providing for interest, noncumulative, to be paid at four percent and, if earned, in the increased amount up to six and one-half percent. The bond was a $3,000 bond and was sold by the trustee on July 17, 1941, for $2,284.20. The life tenant contends that interest at the rate of two and one-half percent up to the time of sale should be paid to her. No evidence has been presented at the audit of this account to show that the proceeds of the sale of this bond included accumulated earnings or interest and as has been pointed out, the interest was noncumulative and, in the absence of any evidence to show that the proceeds of the sale of the bond included accumulated interest, the exception cannot be sustained and is hereby dismissed.

The trustee received as a part of the trust at its inception a six percent bond of the Thayer-West Point Hotel Company. No interest was received by the trustee. Interest was not cumulative but the bond was de-

---

* The court here quoted from pages 529-530.

scribed as an income bond. The company was in liquidation. It was redeemed at par for $500, being the face amount of the bond. In addition trustee received 10 shares of common stock in the same corporation as a final liquidating dividend on the said shares on July 21, 1948. The record is devoid of any evidence that the liquidating dividend was a dividend of preferred or guaranteed arrearages and it was not a cash dividend. Objections number 4 and 5 must be dismissed since accountant was correct in including these items as principal.

In the case of American Machine and Foundry Company, trustee received from time to time, beginning in 1951 and continuing to 1961, a two and one-half percent stock dividend, a four percent stock dividend, a two for one split of 10 shares, and a two for one split of 20 shares as well as 30 rights to purchase stock. The stock dividends are properly apportionable to income but the situation is different with reference to the stock splits since generally a stock split represents neither a division of corporate earnings or profits nor a recognized apportionable event: Pew Trust, supra. Objection number 6 is sustained insofar as the dividends are concerned but dismissed with reference to the allocation of the proceeds of the sale of rights to purchase stock and also with reference to the stock splits which were correctly treated as principal.

Trustee, in 1957, sold 25 rights to purchase stock in the Anaconda Copper Mining Company. The proceeds were correctly allocated to principal. Objection number 7 is dismissed.

Three hundred thirty shares of Berks County Trust Company stock were received by the trustee from the estate of the settlor. Additional shares were purchased through the use of rights to purchase stock, and from 1956 to 1963, trustee received from time to time a two percent stock dividend, another two percent stock divi-

dend, a 10 percent stock dividend and numerous rights to purchase stock. In accordance with the reasons aforementioned, objection number 8 is sustained with reference to the stock dividends less than six percent, and dismissed with reference to the sale of rights and with reference to the 10 percent stock dividend. . . .

Trustee, in February 1953, received a stock dividend of National City Bank of New Jersey stock on the basis of twenty-four for one, and in 1961 and 1962, received a stock dividend of two percent each year in shares of the said Company. Objection number 11 is sustained insofar as the stock dividends are dividends of less than six percent; such stock dividends should be apportioned to income.

Trustee, in November 1950, received 25 shares of General Motors Corporation stock as a two for one stock split and in November 1955, received 100 shares of stock in the same corporation as a three for one stock split. Stock splits were properly apportioned to principal (Pew Trust, supra), and objection number 12 is dismissed.

In January of 1951, the trustee received a five percent stock dividend in stock of International Telephone and Telegraph Company and in May 1959, received 21 shares of stock in the said company as a two for one stock split. Twenty-one rights to purchase were also received and sold. Objection number 13 is sustained insofar as the five percent stock dividend is concerned since this stock should have been allocated to income.

On November 6, 1937, the trustee sold 10 rights to purchase debentures of the Pennsylvania Railroad Company. The rights being rights to purchase debentures, the proceeds of the sale of the said rights are properly allocated to principal (Chamberlain Trust, 10 Fiduc. Rep. 97), and objection number 14 is dismissed.

Ten shares of Standard Oil Company of New Jersey capital stock constituted a portion of the original trust corpus. In January 1944, trustee received one share of Consolidated Gas Company stock which should have been allocated to income: Pew Trust, 411 Pa. 96. Trustee also received rights to purchase stock and a two for one stock split. There being no evidence as to whether the stock split was actually a split or dividend, accordingly objection number 15 is sustained with reference to the sale of one share of Consolidated Gas Company stock and dismissed as to all other items.

Trustee, in December 1954, received two shares of Consolidated Natural Gas Company stock as a two for one stock split. In the absence of any evidence that the stock split was a stock dividend, objection number 16 is dismissed as well as the exception to the sale of two rights to purchase stock.

Trustee originally received 10 shares of Texas Corporation, now Texaco, Inc., as a part of the original distribution to it of this trust corpus. Between November 1948, and August 1961, trustee received a two and one-half percent stock dividend, a 100 percent stock dividend, a two for one stock split, three two percent stock dividends and a two for one stock split. It also sold 88 rights to purchase stock. Objection 17 is sustained with reference to the stock dividends of less than six percent which should have been allocated to income, but dismissed with reference to the sale of rights and stock splits, there being no evidence to establish that said stock splits were stock dividends.

One hundred shares of Pennroad Corporation, now Madison Fund, Inc., common stock were distributed to the trustee at the inception of the trust. In August 1956 it received a five percent stock dividend. These shares should have been allocated to income, and objection number 18 is sustained with reference thereto. The exception is dismissed with reference to the allo-

cation of the proceeds of the sale of Madison Fund stock, which life tenant claims to be income, since there is no evidence from which we can find what, if any, portion thereof should have been allocated to income: Lovett Estate (No. 2), 78 D. & C. 21.

And now, to wit, May 11, 1964, the accountant, Berks County Trust Company, trustee as aforesaid, is ordered and directed to file an amendment to its account within 20 days from the date of this order, reflecting the directions and conclusions contained in this opinion.