## Haas Trust

*Roland Fleer, Waters, Fleer, Cooper and Gallager,* for accountants.

TAXIS, P. J., May 21, 1965: The reason or purpose of the account presently before the court is to decide and determine treatment of stock dividends referred to hereinafter . . .

The question presented for determination concerns the proper treatment of stock dividends by the trustees.

This question was raised for the first time in this trust by the trustees' receipt on December 15, 1964, of the dividend shown on page 2 of the account, paid in

shares of common stock of Rohm & Haas Company, on shares of common stock of the company forming part of the principal of the trust. In view of the various decisions of the Supreme Court of Pennsylvania construing the provisions of the Principal and Income Acts of May 3, 1945, P. L. 416, and July 3, 1947, P. L. 1283, on this subject and of the amendment of section 5(1) of the 1947 Act, by the Act of August 1, 1963, P. L. 442, determination of the treatment of stock dividends is therefore necessary.

Briefly summarized, the trust provides that from the creation of the trust until 20 years after the death of the survivor of F. Otto Haas and John Charles Haas, settlor's sons, income from the trust is to be distributed only for charitable purposes.

Thereafter, and until termination of the trust, the income and after termination the principal is to be distributed "to such person or persons, firm or firms, and/or corporation or corporations" as F. Otto Haas and John Charles Haas (each as to one half) may appoint by will, with similar power in the succeeding generations to appoint to the extent that such power was not fully exercised by preceding generations. In default of the exercise of the power by a son of settlor or by his issue, then to his issue and, if none, to the issue of the other son and, if none, to the Phoebe Waterman Foundation, a charitable corporation.

This inter vivos trust was created by an agreement dated August 24, 1961. Thereby, Phoebe W. Haas, the settlor, transferred to the trustees without consideration shares of stock of Rohm & Haas, G.m.b.H., as the initial corpus of the trust. The agreement provides that the trust is irrevocable and that the settlor may add other property to the trust.

From the creation of the trust until 20 years after the death of the survivor of settlor's two sons, both living, the net income is to be distributed only for

charitable purposes. Thereafter, the income, and, on termination of the trust (i.e., 20 years after the death of the survivor of settlor's children, grandchildren and their spouses living at the creation of the trust), the principal, are to be distributed as the sons each as to one half, and their succeeding generations may appoint by will; in default of appointment to the issue of settlor's sons and if none to the Phoebe Waterman Foundation, a charitable corporation. Settlor retained no possible interest either in income or principal of the trust.

In 1964, Phoebe W. Haas, settlor, also by gift without consideration, added to this trust shares of common stock of Rohm & Haas Company. On these shares there was declared and paid in December 1964, a three percent dividend in the common stock of that company. Accountants have accounted for that stock dividend as principal of the trust in the account now before the court.

Due notice of the filing and audit of this account with a copy of the trust agreement and of the account was given as required to the Attorney General. His acknowledgment as parens patriae of receipt of notice was submitted at the audit.

The agreement which created this trust on August 24, 1961, contains no provisions expressly spelling out in writing settlor's directions that stock dividends be treated either as principal or as income. Neither did the 1932 trust agreement in Pew Trust, 411 Pa. 96 (1963), thus spell out Mrs. Pew's intent on this same subject. In Catherwood Trust, 405 Pa. 61 (1961), the Supreme Court had overruled prior decisions holding the Principal and Income Acts of 1945 and 1947 inapplicable to trusts created prior to the effective dates of these statutes. Therein it had also been apparently indicated that in all subsequent audits (i.e., after July 26, 1961) the treatment of stock dividends

would be according to the Principal and Income Act of 1947, expressly including stock dividends of six percent or less which before the statutes were income not subject to apportionment under the Pennsylvania rule.

However, in Pew Trust, supra, the Supreme Court held that stock dividends of six percent or less in an audit after Catherwood Trust, supra, nonetheless were distributable as income and were not to be retained in principal under the Act of 1947. The Supreme Court reasoned that when Mrs. Pew provided for distribution of "net income" she was entitled to rely on what "in 1932 had a clear meaning to laymen, lawyers and Judges alike": Pew Trust, 411 Pa. 96 (1963), at page 108. That meaning was to include stock dividends of six percent or less as income.

The Supreme Court also reasoned that while section 5(1) of the Principal and Income Act of 1947 made all stock dividends principal, the purpose of section 2 of the act was to preserve to the settlor "his basic centuries old right to determine to whom his property should go, and how . . . i.e., what he wanted to go to his life tenant as income and what to his remainderman as principal": Pew Trust, 411 Pa. 96 (1963), at page 105.

Section 2 of the Act of 1947 was held not to be construed "as intending to destroy or effectually nullify what has always been considered the inherent basic fundamental right of every owner of property to dispose of his own property as he desires, so long as it is not unlawful: . . .": Pew Trust, 411 Pa. 96 (1963), at page 106.

After examining the facts and circumstances surrounding Mrs. Pew when she created her trust in 1932, as distinguished from 1947 when the Principal and Income Act became law, the Supreme Court interpreted her trust as intending small stock dividends of six percent or less to be distributable as income. Here, as in Pew Trust, determination of the question submitted

for adjudication likewise requires examining the facts and circumstances surrounding Mrs. Haas when she created this inter vivos trust on August 24, 1961, as distinguished from September 30, 1963, when section 5(1) of the Principal and Income Act was amended to make stock dividends of six percent or less income.

These facts and circumstances surrounding Phoebe W. Haas, the settlor, on August 24, 1961, were: (1) Knowledge that in the course of the careful estate planning in the lifetime of her late husband, Otto Haas, he had created similar trusts of Rohm & Haas Company common stock which had a long-established policy of paying small annual dividends in common stock under which stock dividends were to be deemed principal; (2) knowledge that Rohm & Haas, G.m.b.H., a German corporation, the stock of which comprised her first gift to this trust and of which the Rohm family owned a majority interest, could not be transferred without the consent of the Rohm family. Their consent to the transfer of the settlor's stock to this trust and to the distribution of cash dividends to charitable beneficiaries had been obtained. But they would not consent to future transfers of stock to third parties. Therefore, this trust had to be established on the assumption that stock dividends could only be deemed as, and remain in, principal. By reason of these circumstances, the elaborate provisions of article 18 were necessary to assure charity of the three and one-half percent return settlor desired it to have. (3) The then existing law of Pennsylvania; namely, (a) that under section 5(1) of the Principal and Income Act of 1947, stock dividends, of the same kind and rank, were to be deemed principal, unless there was an express direction otherwise under section 2; and (b) that according to Catherwood Trust, the Act of 1947 would control in all audits thereafter, specifically "including stock dividends of 6% or less".

If Mrs. Pew, creating a trust in 1932, was entitled to rely on the then "clear meaning" of "net income" as including stock dividends of six percent or less, then Mrs. Haas, using that same term in 1961 when the Act of 1947 defined it as excluding stock dividends paid in the same kind and rank, must be entitled to equal reliance on an even clearer meaning.

If Mrs. Pew in 1932 was not obliged to anticipate the Act of 1947, and express her intent in the identical language of that subsequent act, then Mrs. Haas, creating a trust in 1961, cannot be held bound to have anticipated the Act of 1963 and to have spelled out in her trust agreement the opposite of what would become the statutory result in 1963.

In Pew Trust, the prime objects of settlor's bounty were the immediate life tenants whom settlor wanted to have the benefit of the small annual stock dividends she knew would be paid.

Here the settlor's primary object was the preservation of principal. Only in that way could she assure that her descendants, the natural objects of her bounty, would have the benefit of continuity of management of the company by the family. Obviously, the settlor's intent was to let all the cash income go to charity for a limited number of years and to preserve the substance of the assets transferred to the trust for the remaindermen. This is evidenced by the provisions for the postponement of invasion of principal in case the cash income should represent a return of less than three and one-half percent per annum.

This court, therefore, holds: (1) That this trust having been created after the effective date of the Principal and Income Act of 1947 and prior to September 30, 1963, the effective date of the amendment to section 5(1) of that act, the gift of "net income" in the trust agreement did not include any stock dividends paid in shares of the same kind and rank as the shares on

which paid in the absence of settlor's clearly expressed contrary intent that such dividends be deemed income; (2) that it was not necessary for Phoebe W. Haas, settlor, to expressly spell out in her 1961 trust agreement directions as to what was and was not income in the identical language which subsequently became required by the 1963 amendment of the Act of 1947; and (3) that it is clear in the light of the facts and circumstances which surrounded Mrs. Haas when she created this trust, she gave and intended to give to the life tenants during the term of the trust only the cash dividends (it being inherently impossible for the trustees to distribute to life tenants any stock dividends on the Rohm & Haas, G.m.b.H. stock with which the trust was created) and that she intended to preserve for her descendants, the remaindermen of the trust, all stock dividends of the same kind and rank as those on which paid.

This interpretation of the trust agreement controlled the stock dividend received December 15, 1964, and properly accounted for as principal in the account now before the court, as well as any future stock dividends during the remaining term of the trust.

The account is confirmed, and the entire balances of principal and income are awarded back to F. Otto Haas and John Charles Haas, trustees, for the uses and purposes of the Phoebe W. Haas Charitable Trust under trust agreement dated August 24, 1961.

The account is confirmed, and it is ordered and decreed that F. Otto Haas and John Charles Haas, trustees, as aforesaid, forthwith pay the distributions herein awarded.

ORDER

And now, May 21, 1965, this adjudication is confirmed nisi.