## Flinn's Estate.

Argued October 5, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. O. Wicks,* of *Weller, Wicks & Wallace,* for appellants.—The life beneficiaries are entitled to only the undistributed earnings which accrued after the trustee received the stocks: Packer's Est., 291 Pa. 194.

The testator intended to postpone the creation of the trusts for his children until settlement of his estate: Earp's App., 28 Pa. 368.

The testamentary intent to postpone creation of the trusts until distribution to the trustee was not an attempt to work an illegal accumulation: Barger's App., 100 Pa. 239; Spring's Est., 216 Pa. 529.

The life beneficiaries are not entitled to the undistributed earnings represented in the stock dividend.

It was error to average the book value or earnings accumulated on the Gulf Oil Stock on a per diem basis to

any given date in the year: Nirdlinger's Est., 290 Pa. 457; Baird's Est., 299 Pa. 39; Graham's Est., 296 Pa. 436.

*Raymond R. Goehring,* of *Patterson, Goehring, McClintock & Collin,* for appellees.—The life beneficiaries are entitled to undistributed earnings accruing from the date of death of testator.

To hold otherwise would necessarily hold that the will would provide for an illegal accumulation of income in violation of the Act of 1853: Quay's Est., 253 Pa. 80.

The trustee and beneficiaries took their interests by virtue of the will at the time of the death of the testator regardless of the fact that the trustee did not receive custody of the securities until sometime later: Nirdlinger's Est., 290 Pa. 457; Earp's App., 28 Pa. 368; Smith's Est., 140 Pa. 344; Harkness's Est., 283 Pa. 464; McKeown's Est., 263 Pa. 78.

The method used to determine the income accumulated on Gulf Oil Stock to a certain date within the year by averaging the yearly earnings on a per diem basis was proper: Nirdlinger's Est., 290 Pa. 457.

OPINION BY MR. JUSTICE KEPHART, November 28, 1932:

Senator William Flinn died February 19, 1924. He left to survive him his widow and six children. After directing the payment of his debts and creating an annuity of $100,000 for his widow, with certain small annuities for others, the testator made provision for his children out of the residuary estate. He permitted his executors, however, to carefully and judiciously administer his estate, granting them five years from the date of his death in which to complete it. Of his residuary estate 39¼% was disposed of outright to certain of his children, and the remainder, 60¾%, was to be paid to the Fidelity Trust Company as trustee for certain uses, inter alia: the income from 16¼% of it was to be paid to Mary Flinn Lawrence during her life with the re-

mainder over, and a similar trust from 16¼% to Mrs. Patterson, and from 11¼% to Ralph E. Flinn. At Senator Flinn's death he owned outright, inter alia, 36,199 shares of Gulf Oil Stock, 315 shares of Colonial Trust Co. Stock, 100 shares of Union Trust Co. Stock and 88¼% of the stock of the Booth & Flinn Co., Limited. This latter concern also owned 15,304 shares of Gulf Oil Co. Stock and 232 shares of Colonial Trust Co. Stock. At the date of testator's death, the Gulf Oil had a book value of approximately $40 a share; Union Trust $3,184 a share; Colonial $261 a share. The appraised value of this stock is not material.

In January, 1925, Booth & Flinn Company passed on to the executors the stock it held of Gulf Oil and the Colonial Trust Companies, and in the fall of 1928 a distribution of the stock in the hands of the executors was made to the trustee, and received by it on the 12th of January, 1929. On this date Gulf Oil was $58 a share, Union Trust $3,944, and Colonial Trust $266 a share; the carrying value of this stock by the trustee was fixed at Gulf Oil $115, Union Trust $7,250, and Colonial Trust Co. $300 a share. After the trustee received this stock, and an allocation had been made by it to the various trust estates, these several stocks were sold. Gulf Oil sold for from $129 to $162 a share, Union Trust $12,000 a share, and Colonial Trust at $300 a share. The proceeds from the sales of these various stocks included undistributed earnings which accrued after the testator died, and the contest here is between the remaindermen and the life tenants as to the time within which this income should be paid to the life tenants.

The important question to decide is at what time should intact value be fixed or taken. The appellant contends that it should be of the date the trustee received the stocks from the executors, while the life tenants and the court below fixed the date of death as the time when the intact value should be fixed.

As a general rule, to which of course there may be exceptions, intact value is fixed as of the date of death: Waterhouse's Est., 308 Pa. 422; but appellant argues that from a consideration of the testator's entire will it was manifest that he intended intact value to be fixed at a later period. Without clear and explicit language in a will naming a later date than death for fixing intact value of a trust estate, courts should hesitate to adopt one from general language or persuasive provisions tending to show such date. To do so would place life tenant in a position to be injuriously dealt with in settling the estate. The will not only fixes the date of death as the date when the trust begins to work, but all provisions work in harmony therewith. The time given for administering or closing the estate does not postpone the effective date of the trust, nor is the trust suspended or held in abeyance for this reason. The fact that Booth & Flinn had a large contract in New York that must be completed would not adversely affect this conclusion, for if there was an immense loss which testator's estate had to meet, while the residuary would suffer thereby, the rule as to intact value would not be affected in the slightest. Nor does the fact that during the period of administration the executors were to advance to each of his children designated sums during the year until the estate was settled disturb this conclusion. These advances were from income and if not would be deducted from their respective legacies or life estates when the trustee received the trust res. Nor is our conclusion affected by the fact that testator preferred his wife before his children in the matter of setting up the trust. We cannot accept the theory that testator intended to work a conversion of the residue of his estate at the time it was received by the trustee; nor the other argument that the receipt by the trustee of these several stocks was equivalent to a purchase of the stock in the market. Any such determination would make more uncertain an already

difficult subject of the law and be productive of harm to the life tenant.

The will gave the income to life tenants from the designated percentages of the residue of the estate, and it spoke from the date of death; it is apparent that the values then existing were the values that the testator had in mind. The fact that the executor might have sold the stock before it was turned over to the trustees would not alter the situation. The claim which the beneficiaries had on earnings could not be stricken down in such fashion. To hold that the trust was not effective at death, or was suspended or held in abeyance until the estate was settled, permits the income from these stocks to accumulate in violation of the Act of April 18, 1853, P. L. 503, condemning such accumulations of income. See Maris's Est., 301 Pa. 20. The court below was clearly right in fixing the intact value of the estate as of the date of death.

The second question involved is the time at which intact value should be fixed on the stock owned by Booth & Flinn which was passed on to the executors by a dividend on January, 1925, about a year after testator's death. The court below held as to this that inasmuch as Senator Flinn owned $88\frac{1}{4}\%$ of the stock of the Booth & Flinn Company he could have voted these stocks to himself and other shareholders at any time, and that he was therefore to all intents and purposes the owner of the stock. The Booth & Flinn Company was a separate, independent entity. Property in its possession owned by it cannot be regarded otherwise; we are not permitted to discard this entity relation. When without good cause we tear down the walls that separate the individual from the entity to suit our views or to secure an adjustable conclusion of what may be a difficult question, we simply pile up difficulties for the future. The book value of this stock at the time it was received as a dividend by the executors should be fixed as the intact value of these several shares. The court below was in

error in fixing it as of the date of death. Inasmuch as the record is in condition to find this value, this slight modification of the decree of the court below must be made, and a decree entered in accordance with this opinion.

Appellant urges that the court below was in error in averaging the yearly earnings on a per diem basis. Senator Flinn died in February, 1924. The Gulf Oil Corporation does not close its books until the end of the year, and it is impossible to find the intact value exactly on the date of death without considering the earnings from the end of the previous year to the date of death which are not paid and are charged to surplus, if such earnings exist. What the court below did was to take the average earnings for the year in which testator died and applied them to the days immediately preceding his death up to the last annual account. While the Fiduciaries Act of 1917, section 22, does recognize situations where dividends have been or are to be paid, it does not consider the precise question of undistributed earnings on corporate stock to be apportioned between the life tenant and remaindermen. As the court below points out, the trustee did not deny the fairness of applying this rule, nor did it attempt to supply any different or better one than to allocate the earnings over the number of days in the year, as was here done. Appellant did not in the slightest attack the accuracy of the evidence on which the finding was based, and inasmuch as the averaging of yearly earnings on a daily basis was some evidence, however slight, we accept the conclusion of the court below as determinative of this question.

The decree of the court below as modified is affirmed at the cost of the estate.