**Tyler Trust**

6

Before KLEIN, Adm. *J.*, GUTOWICZ, BRUNO, PAWELEC and JAMISON, *JJ.*

*Maurice Heckscher* and *William S. Ayres,* of *Duane, Morris & Heckscher,* for accountant.

*John L. Harrison, Jr.,* of *Snyder & Bent,* for executor of deceased life tenant.

*Philip A. Bregy,* Guardian and Trustee ad litem, p.p.

*Arthur M. Cooper,* for Commonwealth.

## ADJUDICATION

BRUNO, *J.,* Auditing Judge, September 25, 1975—This trust arises under deed of trust of Sidney F. Tyler, dated October 7, 1919, and a supplement thereto, dated August 30, 1922, whereby the settlor transferred certain securities in trust until the death of the last survivor of his son, George F. Tyler, and of his son's three named children, Sidney F. Tyler, Molly Elkins Tyler and George F. Tyler, Jr., to pay the net income to the children and issue of deceased children of George F. Tyler, per stirpes, until the termination of the trust, and thereupon to

distribute the principal to the issue then living of settlor's son, George F. Tyler, per stirpes, with further provisions for distribution of income and principal upon other contingencies not necessary now to recite. By the terms of the deed, the trust is irrevocable.

The settlor, Sidney F. Tyler, died on June 3, 1935. George F. Tyler, the settlor's son, died on January 8, 1947.

Molly Tyler West, the daughter of George F. Tyler, died a resident of Montgomery County on May 2, 1970, and the present accounting was filed by reason of her death. She was survived by four children, viz.: Stella West Lowry, Molly West Ellsworth, Harry F. West, Jr., and Isabel Duer West, all of full age and sui juris.

Sidney F. Tyler and George F. Tyler, Jr., grandchildren of the settlor, survive, and the trust continues in its entirety.

Sidney F. Tyler has five children, all of full age and sui juris, viz.: Hope Tyler Buckner, Mary H. Tyler Love, Sidney F. Tyler, Jr., Daniel Tyler and Robert Ogden Tyler.

George F. Tyler, Jr., has three children, all of full age and sui juris, viz.: George F. Tyler, 3rd, Michael Edward Tyler and Carol Tyler Noble.

The names and relationship of Settlor's grandchildren, and their respective issue, together with the dates of birth of such as are minors, are fully set forth in the statement of proposed distribution and need not be repeated here.

On February 11, 1972, the court (Lefever, J.), entered a decree, sur petition, authorizing the trustee to divide the corpus into three separate trusts for settlor's children and their respective issue, and thereafter, the trustee filed a supplemental ac-

count effectuating the court's decree and showing the composition of each trust.

By decree dated May 19, 1972 (Lefever, J.), sur petition, Philip A. Bregy, Esq., was appointed guardian ad litem for such issue of the settlor as are minors, and trustee ad litem for unborn persons having possible interests in remainder and for all other unascertained interests.

This account originally appeared on the audit list of the late Judge Lefever, and upon his death it was assigned to Judge Saylor. At the request of all counsel, including the guardian-trustee ad litem, Judge Saylor postponed the audit generally until such time as the Federal estate tax liability in the estate of Mollie Tyler West, Deceased, was determined. By reason of Judge Saylor's retirement, the account was assigned to me for audit and adjudication by Administrative Judge Klein.

The account and its supplement cover a period of 53 years from October 9, 1919, to June 28, 1972. In the account, the trustee retained in principal without allocation or apportionment the proceeds of sales of stocks, all stock distributions, including stock dividends of six percent or less and the proceeds of such as were sold, and the proceeds of sales of rights to subscribe to shares. In the supplemental account, however, the trustee transferred to income from the proceeds of sales cash in excess of intact values apportioned under the Pennsylvania rule of apportionment, also shares received as stock dividends of six percent or less prior to May 3, 1945 (the effective date of the Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3470.1, et seq.), and after September 30, 1963 (the effective date of the 1963 amendment to the Principal and Income Act of July 3, 1947, P. L. 1283, as amended, 20 PS

§3470.1, et seq.,), or the proceeds of such distributions, and also the proceeds of stock subscription rights. All of these transfers from principal to income were in accordance with the Supreme Court decision in Tyler Trusts, 447 Pa. 40, 289 A. 2d 441 (1972), and were predicated upon calculations prepared by Richard L. Horter, former trust administrator of The Fidelity Bank. It was stipulated by all counsel, including the guardian-trustee ad litem, that Mr. Horter's calculations are mathematically correct and were prepared in accordance with the law applicable to such transactions.

The transfers from principal to income as shown in the supplemental account exceed $850,000. They do not, however, include stock distributions of six percent or less received during the period from May 3, 1945, to September 30, 1963.

In the estate of Molly Tyler West, the deceased income beneficiary, the Internal Revenue Service has included in its assessment of Federal estate tax, one-third of these small stock distributions and assessed tax thereon. Notwithstanding, the trustee has retained such distributions in the trust as principal. Consequently, Harry W. West, executor of the estate of Molly Tyler West, deceased, has presented a claim against principal for these stock distributions and their accretions, or the proceeds thereof. A summary of the claim as of June 28, 1972, the closing date of the supplemental account, is attached to the statement of claim and marked Exhibit "A." Specifically, it relates to 14 investments from which the trustee received small stock dividends during the period in question and shows the number of shares and cash claimed as income. These allocations were likewise prepared by Mr. Horter and counsel, including the guardian-trustee

ad litem, stipulate that they are mathematically correct and may be received in evidence in lieu of testimony.

The question involved, therefore, is whether the small stock distributions of six percent or less received by the trustee during the period May 3, 1945, to September 30, 1963, and retained in principal, should be allocated to income. Counsel for the claimant contends: (1) That the mere gift of income to Molly Tyler West includes such distributions and, if such is not the case, (2) that the court must find from the language of the deed and the circumstances surrounding the settlor at the time of its execution that he intended such distributions to be deemed income. He relies upon the decision in Pew Trust, 411 Pa. 96, 191 A. 2d 399 (1963).

Prior to 1945, the receipt of an extraordinary cash or stock dividend was an apportionable event and, under the Pennsylvania rule, required an allocation between the life tenant and remainder interests in order to preserve the "intact value" of the trust investment: Flinn's Estate, 310 Pa. 206, 165 Atl. 31 (1932). The rule, however, was not applied to ordinary stock dividends of six percent or less. "While we have never held that ordinary small stock dividends should be considered as income payable to the life tenant, we have not held to the contrary; our prior decisions dealt with stock dividends extraordinary in nature": Catherwood Trust, 405 Pa. 61; 173 A. 2d 86 (1961). Such was the law with respect to stock distributions until 1945 when the legislature enacted the Uniform Principal and Income Act of 1945, effective May 3, 1945.

The apportionment morass, resulting from the complexity of modern corporate structure, led to the rejection of the rule and to the enactment of the 1945 statute. Since the enactment of the statute,

certain legal principles have been firmly established. These principles are: (1) Although the Act of 1945 was repealed, its provisions were substantially reenacted by the current Principal and Income Act of 1947 so that the cut-off point is May 3, 1945, when the question is whether the rule or the statute applies (Tyler Trusts, supra); (2) that the statute applies retroactively to all trusts whether created before or after May 3, 1945, and is constitutional (Catherwood Trust, supra); (3) that by the provisions of the statutes the rule applies to corporate distributions received prior to May 3, 1945, and such distributions are apportionable under the rule (Reznor Estate, 419 Pa. 188, 213 A. 2d 791 (1965)); and (4) that the "Legislature has determined that *date of receipt* should be the crucial factor in deciding when a new principal and income rule should be effective": Darlington Estate, 434 Pa. 198, 203 (1969). (Emphasis in original.)

As guardian-trustee ad litem, Mr. Bregy denies the right of Molly Tyler West as an income beneficiary to share in stock dividends of six percent or less received during the period from May 3, 1945, to September 30, 1963. He contends (1) that by the express provisions of the 1947 Act such stock dividends are deemed to be principal in the absence of a contrary direction by the settlor, and (2) that no such direction appears in settlor's deed of trust, nor does it appear from any facts or circumstances surrounding the settlor at the time he created the trust that he gave, or intended to give, such stock dividends to the income beneficiaries.

The following are the pertinent provisions of the Act of 1947:

"Section 2. Application of the act; powers of settlor

"This act shall govern the ascertainment of in-

come and principal. . . between tenants and re-maindermen in all cases where a principal has been established with. . .the interposition of a trust: Provided, That the person establishing the princi-pal may himself direct the manner of ascertain-ment of income and principal. . .or grant discretion to the trustee, or other person, to do so and such provision and direction, where not otherwise con-trary to law, shall control, notwithstanding this act.

"Section 5. Corporate dividends and share rights

"(1) All dividends on shares of a corporation, forming a part of the principal, which are payable in the shares of the corporation itself of the same kind and rank as the shares on which such dividend is paid shall be deemed principal.

". . .

"(2) All rights to subscribe to the shares . . . of a corporation, accruing on account of the ownership of shares . . . in such corporation, and the proceeds of any sale of such rights shall be deemed principal.

". . .

"Section 15. Time of taking effect

"The provisions of this act shall become effective upon the enactment thereof, and shall apply to all estates of tenants or remaindermen and to all . . . trust agreements and trust relations theretofore or thereafter made or created . . . : And, provided further, That the provisions of this act shall not apply to receipts and expenses received or paid prior to the effective date of this act."

Claimant seeks to bring his claim within the ambit of the decision in Pew Trust, supra, and con-tends that Pew requires the distribution of stock dividends of six percent or less as income, even though received after the 1945 Act and prior to the 1963 amendment, and even though the trust in-

strument is silent as to their allocation, notwithstanding the statute which, prior to 1963 provided that *all* stock dividends shall be deemed principal unless the settlor directed otherwise. A similar contention was made in Hallowell Trust, 432 Pa. 184, 246 A. 2d 684 (1968), and, in response, our Supreme Court, at page 194 said: "We disagree with the interpretation placed by the court below on Pew that all small stock dividends, regardless of when received and regardless of what the legislature has declared such small stock dividends to be deemed during the period of receipts of such dividends, must be classed as income. Pew does not stand for this proposition."

In Pew, the stock dividends of six percent or less claimed as income derived from shares of the Sun Oil Company which the settlor transferred in trust, whose long-standing established policy was to pay small yearly cash dividends and small six percent or less stock divdends to its shareholders, and the court "in the light of the facts and circumstances which surrounded Mrs. Pew at the time she created the trust" found that "she . . . intended to give to her grandson Arthur E. Pew, Jr., the life tenant of this trust, the small stock dividends of 6% or less, as well as the cash dividends which were paid annually, or as often as possible, to the owners of the common stock of the Sun Oil Company." In other words, the claim of the income beneficiary in Pew was allowed, not because the gift of income included such stock distributions after May 3, 1945, despite section 5(1) of the 1945 and 1947 Acts, but primarily because the court found from the surrounding facts and circumstances that the settlor intended such stock distributions to be deemed income.

In Tyler, the court expressly limited the force of the Pew decision as a precedent to its holding with respect to the Settlor's intention, and held, at page 51: ". . . while ordinary dividends of 6% or less received before 1945 are awarded to income; after 1945, both ordinary and extraordinary stock dividends are allocated to principal in the absence of a contrary direction by the Settlor." Such was the law until August 1, 1963, when the Legislature amended the Principal and Income Act of 1947, effective September 30, 1963, and provided that stock dividends of six percent or less received after that date shall be deemed income unless the settlor directs otherwise.

Nothing can be gleaned from the language of the trust instrument to support the claimant's contention that the Settlor intended stock dividends of six percent or less should be treated as income; nor do any facts or circumstances surrounding the creation of the trust support the claim. I find no similarity between the instant trust and Pew. As previously stated, the original corpus of the Pew Trust was composed entirely of shares of the Sun Oil Company, the sole asset of the trust, whose longstanding established policy was to pay small yearly cash dividends and small six percent or less stock dividends to its shareholders. We have no such facts in the instant case. Here, the orginal corpus of the trust was composed of 2,500 shares of General Asphalt Co., preferred, from which no small stock dividends were ever derived. All of the small stock dividends in dispute came from 14 investments acquired by the trustee long after the trust was created. In the absence of any language in the trust instrument expressing a contrary intention, or any

surrounding circumstances from which such an intention could be imputed to the Settlor, I find that the small stock dividends in dispute are principal as mandated by the statute. The claim, accordingly, is dismissed.

Counsel for the claimant offered in evidence copies of certain documents which the guardian-trustee ad litem agreed were authentic, but reserved the right to object to their admissibility. Among the documents are copies of deeds for two other trusts which the settlor created, one in 1917 and the other in 1933. Each of these deeds expressly provide that ". . . all allotments of bonds, stock or stock dividends shall be treated and regarded as belonging to the principal of the trust and not as income." In construing this language, the Supreme Court in Tyler Trusts, supra, held that ". . . the settlor intended and directed that all stock dividends . . . 'shall be treated . . . as . . . principal,' " and, accordingly, awarded to principal the stock dividends of six percent or less received during the period from May 5, 1945, to September 30, 1963. While there is no such provision in the instant Deed of Trust, the claimant would have the court "draw inferences" from these other deeds that by omitting such a provision in the instant deed the settlor intended the gift of "net income" to include small stock dividends. To do so would be pure conjecture. If the settlor so intended, he would have incorporated a similar provision in the instant deed. None of these deeds is related or in any way dependent upon the others. Each creates a separate trust. Moreover, there is no ambiguity in the gift of "net income" to the beneficiaries of the instant trust that would permit consideration of extrinsic evidence.

The guardian-trustee ad litem objects to the admission of settlor's other deeds as irrelevant, and his objection is sustained.

*    *    *    *    *

And now, September 25, 1975, the account and its supplement are approved nisi.

## OPINION SUR EXCEPTIONS
## TO ADJUDICATION

PAWELEC, *J.*, March 1, 1976—The issue before the court for determination is: In a pre-1945 trust, are undistributed stock dividends of six percent or less received between May 3, 1945, and September 30, 1963, to be awarded to income or principal? The auditing judge awarded them to principal, and these exceptions follow.

Sidney F. Tyler created this trust on October 8, 1919, and supplemented it on August 30, 1922. The relevant trust provision stated that income is to be paid to the children of George F. Tyler, a son of settlor, and per stirpes to the issue of any deceased children as may be living at the respective periods of payment, until the trust is terminated. Sidney F. Tyler, Jr., Molly Tyler West and George F. Tyler, Jr., were the original income beneficiaries and the only children of George F. Tyler. Molly Tyler West died on May 2, 1970, and her executor has claimed the aforesaid stock dividends.

Exceptants present a two-pronged argument in support of their position. They argue that Tyler Trusts, 447 Pa. 40, 289 A.2d 441 (1972), did not expressly overrule Pew Trust, 411 Pa. 96, 191 A.2d 399 (1963), and, thus, the decision of the Supreme Court in Pew Trust mandates the distribution of these stock dividends to income notwithstanding the Principal and Income Acts in effect during this

period of time. In the alternative, if the court concludes Pew is not controlling, they then argue that settlor's intent, as gathered from the language in the instrument and surrounding circumstances, was that small stock dividends were to be paid to the income beneficiaries and is determinative.

In his comprehensive opinion, the auditing judge reviewed the law in regard to the disposition of stock dividends as dictated by the common law and the various Principal and Income Acts. He also reviewed Pew Trust, supra, and Tyler Trusts, supra, and concluded Pew was not controlling in this case.

A close analysis of the Pew decision leads to the conclusion that the stock dividends were awarded to the life tenant because the court found from the surrounding facts and circumstances that the settlor intended such stock distributions to be deemed income. This analysis is confirmed in Tyler Trusts, supra, where the court stated at page 50:

"In its opinion on exceptions the court below characterized Pew as 'sui generis' and intimated that it should no longer be followed as a precedent. Since lower courts have made awards, and trustees have undoubtedly made voluntary distributions, in reliance on Pew, we shall set things straight by simply limiting hereafter the force of Pew as a precedent to its alternative holding as summarized in the second-from-last paragraph of the opinion of the Court . . ." (The footnote quotes paragraph (2) from Pew indicating the settlor's intent was the controlling factor in the decision.)

Thus, although Pew was not expressly overruled, it was limited as precedent to its particular facts. With reference to stock dividends, the Supreme Court stated in Tyler Trusts, supra, at page 51:

"Thus, up until September 30, 1963, the law should have been, and is now, that extraordinary stock dividends received prior to the new effective date of the 1945 legislation must be apportioned between the income beneficiaries and remaindermen in accordance with the Rule, while ordinary dividends of 6% or less received before 1945 are awarded to income; after 1945, both ordinary and extraordinary stock dividends are allocated to principal in the absence of a contrary direction by settlor." (Citations omitted.)

This trust instrument contains no such contrary direction. Thus, we conclude that Pew Trust, supra, is not controlling in this case.

Exceptants then argue that settlor intended that stock dividends of six percent or less should go to income. In support of this theory, they argue that settlor created a trust for the benefit of his grandchildren and used the simple word "income" to describe what they were to receive. Exceptants then point to the use of the words "larger income" in Item Fifth of the trust and conclude that settlor intended the grandchildren to obtain a larger income than would normally be received, and, thus, settlor must have intended that these stock dividends be paid to the income beneficiaries. This reasoning and conclusion is erroneous. Item Fifth in its entirety reads as follows:

"FIFTH: The investment of the principal or corpus of the estate hereby given in trust is left to the discretion of the Trustee, with the view of thereby obtaining a larger income therefrom than would be received were it invested solely in legal securities. The Trustee shall not be hampered by any laws or rules of laws now existing or which may hereafter exist in regard to the character of investments to be

made by Trustees, but shall invest the principal or corpus in whatever manner it may see fit, using the same discretion as in making its own corporate investments without being in any way responsible or liable for any losses or depreciation in value that may result therefrom."

When this trust was executed in 1919, section 41(a) of the Fiduciaries Act of 1917, Act of June 7, 1917, P. L. 447, controlled the investments which could legally be made by trustees. It severely restricted the investments which could be made by a fiduciary. It is obvious that settlor merely intended to relieve the trustee from these statutory restrictions and to adopt the prudent man rule. The clause has no significance as to whether stock dividends are to be allocated to income or principal.

In addition, exceptants argue that the surrounding circumstances reinforce the conclusion that settlor intended small stock dividends should go to income. The circumstances to which they refer are that this same settlor created two other substantial trusts, i.e., the trusts in Tyler Trusts, supra, and since both of these trusts included an express direction that stock dividends were to be allocated to principal and not income, and since this trust does not contain such language, they conclude that this omission is a manifestation of settlor's intent which requires the stock dividends in question be awarded to income, contrary to the provisions of the effective Principal and Income Act.

Although the auditing judge sustained an objection to the admission of these documents, he also analyzed this issue and concluded this contention was without merit. We agree with his analysis and conclusion.

Exceptants note, as supportive of their position,

the fact that the Internal Revenue Service has included the aforesaid dividends in the estate of the said Molly Tyler West and has assessed Federal Estate Tax thereon even though the dividends have not been received by the estate. We do not view the interpretation of Pennsylvania case law by the Internal Revenue Service as binding authority.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.