Steele Estate.

Argued January 11, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Thomas B. K. Ringe,* with him *Miles W. Kirkpatrick, David B. Skillman* and *Morgan, Lewis & Bockius,* for appellants.

*William White, Jr.,* with him *Edward J. Fox, Jr., Fox & Oldt, Sanford D. Beecher* and *Duane, Morris & Heckscher,* for appellee.

OPINION BY MR. JUSTICE BELL, March 24, 1954:

Three charities which are remaindermen under Mr. Steele's will vigorously contend that a stock dividend which is admittedly income should not be distributed to the life tenant but should be retained in the trust, and its equivalent in cash be distributed to the life tenant.

H. J. Steele died March 19, 1933. He created 5 other trusts in his will in which he clearly disclosed that his wife and daughter were the primary objects of his

bounty. The trust here involved covers the stocks and bonds of the Easton Publishing Company, which at the time of his death were a part of his residuary estate. In the Ninth Paragraph of his will the testator gave and bequeathed his residuary estate ". . . in trust to pay the net income thereof in equal shares to my wife and daughter during their natural lives and upon the death of either then to the survivor and upon the death of both then to pay the principal thereof as follows: one fourth to the issue of my daughter and if there be no such issue living at that time then to the Easton Childrens Home, one fourth to St. Johns Lutheran Church of Easton; one fourth to Lafayette College and one fourth to the Easton Hospital as part of its endowment fund." Mrs. Fretz, testator's only daughter, is still living but has no issue.

Testator appointed his wife, his daughter, Mrs. Fretz, and The First National Bank and Trust Company of Easton as Trustees of his estate. Although his widow died in June, 1937 no successor trustee was appointed; The First National Bank and Trust Company was succeeded as trustee by the Easton National Bank.

Part of the principal of Mr. Steele's trust consisted, at the time of his death, of 3,925 shares and $105,000 par value bonds of the Easton Publishing Company. The shares of stock then outstanding totaled 8,000 shares. On March 14, *1951* the Easton Publishing Company declared a 25% stock dividend, of which the Steele Estate received 981¼ shares. The trustees thereafter filed an account in order to have the Court determine, as between life tenant and remaindermen, who, was entitled to this stock dividend. The intact value of each share of Easton Publishing Company at Mr. Steele's death was $114.55. On March 14, 1951, *after* declaration of the stock dividend in question, the intact value had increased to $135.42 a share. Even after

payment of the stock dividend and the transfer from surplus to capital of $200,000 to cover the dividend, the company had a surplus of $354,000 as compared with $116,000 surplus at testator's death.

The remaindermen admit, as they must, that under Pennsylvania's Intact Value Rule, which was established in 1857 in *Earp's Appeal*, 28 Pa. 368, and has been followed ever since, until changed by the legislature in the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS 3470, a dividend of stock of a corporation which represents earnings accumulated by the corporation since the death of the testator is income and distributable as such to the life tenants, provided, of course, that the intact value (existing at the testator's death or at the time of its acquisition) is preserved.

The Principal and Income Act of 1947 cannot be applied retroactively to trusts created prior thereto with respect to the ascertainment and distribution of accumulated corporate earnings and profits: *Crawford Estate*, 362 Pa. 458, 67 A. 2d 124.

Appellants allege three reasons for retaining the stock dividend in the principal of the trust and giving the life tenant the equivalent thereof in cash: (1) A distribution of the stock dividend in kind would work substantial damage to the trust by reason of reducing its voting strength from 49% to 39%; (2) testator's will shows an intention that the working voting control of this stock should be preserved as principal; and (3) Mrs. Fretz's self-interest conflicted with the best interests of the trust and prevents, under the doctrine of self-dealing, the receipt by her of this stock dividend. We shall discuss these seriatim.

(1) Testator's wife and daughter—not the charities —were the primary objects of his bounty, and he directed that they and the survivor should be paid the net income during their and the survivor's life. The

stock dividend in question was admittedly income, and under Mr. Steele's will must be paid or distributed to his daughter (or at her option sold and the proceeds of sale distributed to her), unless the testator directed otherwise, or unless she forfeited her right thereto.

Appellants contend that the *market value* of the estate's holding of stock in the Easton Publishing Company would be very greatly reduced if the stock dividend were distributed to the life tenant instead of being added to and retained by the corpus of the trust. The complete answer is that even if true this is immaterial; under the testamentary direction to pay the net income to his daughter, and under the then existing law of Pennsylvania, market value is of no materiality; and the fact, if it be a fact, that the market value of the stock held in trust would be greatly reduced is not sufficient to defeat Mrs. Fretz's legal right to this stock dividend: *King Estate,* 361 Pa. 629, 635, 66 A. 2d 68; *Waterhouse's Estate,* 308 Pa. 422, 428, 162 A. 295; *Jones v. Integrity Trust Co.,* 292 Pa. 149, 152, 155, 140 A. 862; *Packer's Estate (No. 1),* 291 Pa. 194, 197, 139 A. 867.

In *Jones v. Integrity Trust Co.,* 292 Pa., supra, Mr. Justice SIMPSON said (page 155) : ". . . Market value has nothing to do with such distributions; under all the situations which arise only the intact value is to be considered. . . ."

In *Packer's Estate (No. 1),* 291 Pa., supra, this Court said (page 197) : ". . . Neither market value, nor any other value than the actual or intact value of the shares, is of any moment in determining how such a distribution [of extraordinay stock dividend] is to be made. . . ."

Furthermore, we are convinced that there is neither authority nor reason nor equity to justify the retention

of a stock dividend which is income, in the principal of the trust and exclude such stock dividend from distribution to the life tenant, because its payment or distribution to the life tenant would reduce the working and voting influence of the testamentary trustees in the Easton Publishing Company by virtue of reducing the trust's percentage of voting stock from 49% to 39%. We therefore find no merit in this contention.

(2) The testator did not disclose, as appellants contend, an intention in his will that the so-called working control of this newspaper stock should be preserved as principal. Appellants rely upon the Sixth Paragraph of testator's will to sustain their argument on this point.

"Sixth: I hold and own a quantity of the capital *stock and bonds** of the Easton Publishing Company of the City of Easton and *it may be* to the interest of my estate that the same shall be preserved *for a time* without separation. I therefore bequeath all my stocks and bonds of said Company . . . which shall be owned by me at the time of my decease unto my executors hereinafter named in trust . . . It is my desire that said stocks and bonds *shall be retained* by my said trustees as investments for said trust *as long as they shall think it safe and profitable and proper* to do so but if according to their best judgment and discretion they shall think it best to sell, exchange assign or dispose of said stocks and bonds they may do so; . . ."

Appellants argue that this paragraph demonstrates that the testator intended that the shares of stock of the Easton Publishing Company should not be divided or treated separately but should be retained in principal as a unit, or if sold, sold as a unit and not piecemeal. We disagree with this interpretation.

---

* Italics throughout, ours.

The testator gave *no directions* whatever as to the retention of these stocks and bonds. He expressed a desire that the stocks and bonds (totaling $105,000 par value and maturing in 1942) should be retained by his trustees as investments, not for a fixed time or until the termination of the trust,—he merely said that *it may be* to the interest of his estate that the stocks *and bonds* shall be preserved *for a time* without separation; and then expressed his desire that said stocks and bonds should be retained by his trustees as investments for the trust as long as they shall think it safe and profitable and proper to do so. There is *no direction* in this paragraph, not even, as we view it, an indication that the stocks and bonds must be preserved intact and without separation until the termination of the trust, but on the contrary, *merely a desire that they be retained as long as the trustees think it safe and profitable and proper.*

Moreover, if our interpretation needed any support, the facts and the other provisions of his will support our construction. The testator must have known that the bonds matured by their terms in 1942; this stock dividend was declared in 1951. The testator therefore could not have contemplated or intended that the bonds and the stock must be held *without separation after 1942.* As further indication of testator's intent he authorized his executors and trustees in the Tenth Paragraph of his will to sell all or any part of his stocks and bonds "whenever in their discretion they may think proper." While this general discretionary power of sale would not prevail over a mandatory provision of sale or retention of the newspaper stock, if such were provided in the Sixth Paragraph of his will, the Sixth Paragraph as we have seen contained no such provision, direction or prohibition.

We therefore find no justification for appellants' construction.

(3) The appellants' third contention is that Mrs. Fretz's self-interest and self-dealing prohibited the distribution to her of this stock dividend. She was, as we have seen, the life tenant under this trust, as well as co-trustee with the corporate trust company. She was an officer and one of the three directors of the Easton Publishing Company. The general principle is well settled that a trustee is under a duty to the trust estate and the beneficiaries thereof to administer the trust solely in their interests, and he may not profit at the expense of the trust estate or the beneficiaries thereof: *Flagg Estate*, 365 Pa. 82, 73 A. 2d 411; *Union Real Estate Investment Co. Case*, 331 Pa. 569, 1 A. 2d 662; Restatement, Trusts, §170(1) ; *Noonan Estate*, 361 Pa. 26, 31, 63 A. 2d 80.

Appellants point out that counsel for Mrs. Fretz and for the corporation obtained from the Commissioner of Internal Revenue an opinion as to the taxability of a stock dividend if it should be declared; and that Mrs. Fretz, as one of three directors, voted for the stock dividend knowing she would receive it in kind, and knowing that the market value of the stock held in the trust as well as its so-called working voting control would be reduced. The Auditing Judge found that Mrs. Fretz had acted in good faith. Even if the facts were as appellants allege, they would not invalidate the declaration of the dividend or prevent its being paid in kind to Mrs. Fretz. In the first place, it will be noted that Mrs. Fretz was co-trustee with a corporate trust company which agreed with her position with respect to the stock dividend. In the next place she could not have prevented the declaration of the stock dividend, even if as director she had voted against it. Certainly obtaining a ruling in advance as to taxability of the

stock dividend, not only for herself but for all other stockholders of the corporation, was neither illegal nor improper.

But the most important, complete and controlling answer is enunciated in *Flagg Estate,* 365 Pa., supra, where this Court held that the doctrine of self-dealing does not apply where the testator knowingly placed his trustee or trust beneficiary in a position which he knew might conflict with the interest of the trust or beneficiaries thereof, and gave her power to act in that dual capacity.

In *Flagg Estate,* 365 Pa., supra, this Court reversed a decree of the Court below, which had set aside a redemption of preferred stock, part of which was owned by the trust estate, on the ground that the acting trustees were also in control of the redeeming corporation. We there held that the existence of this conflict of interest of the trustees on the one hand, and of themselves as directors of the corporation on the other hand, did not violate the rule of self-dealing, or affect the redemption because their actions were authorized by the testator. The Court speaking through Mr. Justice LINN there said (pages 87-88, 89) : "While the term 'self-dealing' sufficiently identifies the rule, it does not define its limitations. The rule is stated in Restatement, Trusts, section 170(1) in the following form: 'The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.' The appellants agree that there may be conflict of interest between them as trustees of the daughter's trust and as directors of the corporation. Both interests were created by the testator to be enjoyed as limited by his will. The mere existence of the conflict cannot be allowed to destroy the trust because the testator had the power to specify the terms on which he bequeathed his property. For the same reason that the

possible operation of the conflict cannot be allowed to destroy the trust, it cannot be allowed to cut down the effect of the absolute bequests, because, again, the testator had the power to make the bequests. The testator, having the power to do so, created the conflict which became a fact or condition in the administration and devolution of his property to be observed by his executors and trustees. This administration is subject to the scrutiny of the courts, who restrain or otherwise pass on charges of breach of trust.

"It is at this point in our review, that the error of the learned court below stands out. The record shows no fraud on the part of the trustees; they acted in good faith; the challenged action is within the provisions of the will . . . The conferred right to exercise all these plenary powers of ownership necessarily modified or displaced the otherwise absolute limitation against self-dealing. This record shows that the conflict of interest did not disqualify the trustees; it shows that they acted in good faith in what they, acting as reasonable men thought was for the best interest of the trust. If they had acted prejudicially the court would have had something to go on."

This case is directly in point and disposes of appellants' contention that Mrs. Fretz is prohibited from receiving this stock dividend because of her conflicting interests and self-dealing.

Notwithstanding the able and ingenious arguments of appellants, we are convinced they are without merit.

The decree is affirmed; appellants to pay the costs.

Mr. Justice CHIDSEY took no part in the consideration or decision of this case.