Walter H. FLINCHBAUGH, Kenneth B. Grove, Frank J. Baker, Kenneth J. Berlin, Glenn R. Wile, Wayne H. McElhaney, Richard F. Hanna, Lawrence B. Young, Raymond W. Johnson, Francis E. Allen, Jr., Paul A. Davis, Andrew B. Petrovich, James A. Cummings, Ernest R. Montgomery, Robert L. Dahlman, Kenneth W. Cumming, John H. Campbell, Robert L. Amsler, Fred Finch, Gail H. Marwood, Clifford L. Smith, Robert E. Brown, Wayne E. Mook, William D. Rice, Jr., Vernon C. Cratty, Boyce E. Lefpley, James E. McCleery, Ellsworth Baker, Robert W. Ditzenberger, and Albert C. McCandless, Plaintiffs,

v.

CHICAGO PNEUMATIC TOOL COMPANY, a corporation; Dennis Dankesreiter, an individual, Richard Miller, an individual, and Charles Fisher, an individual, Defendants.

Civ. A. No. 80–88.

United States District Court, W. D. Pennsylvania.

Jan. 28, 1982.

Stephen Barsotti, Allison Park, Pa., for plaintiffs.

Harry Gent, Franklin and Kenneth Khoury, New York City, for defendants.

## OPINION

WEBER, Chief Judge.

This is an action brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. In this action the plaintiffs, vested participants in a pension fund managed by the defendants, seek payment of certain funds allegedly owed them under the pension agreement. The parties have agreed to submit this matter for determination by the court on the pleadings, briefs and the evidentiary record developed at a hearing held October 23, 1981.

Upon a review of the entire record we conclude that the plaintiffs' challenges to the decision of the pension trustees in this case are without merit. Accordingly, judgment will be entered for the defendants.

## I. FACTS

In August of 1977, Chicago Pneumatic Tool Company (CPT) entered into a Collective Bargaining Agreement with Local 335 of the International Association of Machinists and Aerospace Workers. This agreement was intended to cover employees at CPT's Franklin Machine Shop from August 1977 to August 1978. The plaintiffs are among these employees covered by the 1977 Collective Bargaining Agreement.

Under the terms of this agreement the right of employees to receive severance payments in the event of a partial plant

closing was limited by the following provision:

Non-duplication of Allowance: Severance allowance shall not be duplicated for the same severance, whether the other obligation arises by reason of contract, law or otherwise. If an individual is or shall become entitled to any discharge, liquidation, severance or dismissal allowance or payment of similar kind by reason of any law of the United States of America or any of the States, districts, or territories thereof subject to its jurisdiction, the total amount of such payments shall be deducted from the severance allowance to which the individual may be entitled under this Section or any payments made by the Company under this Section may be offset against such payments... Article XXVII, Section VI of the 1977 Collective Bargaining Agreement.

The Collective Bargaining Agreement also provided that the Pension Plan existing between the parties was to be incorporated by reference into the agreement.

A Pension Agreement was executed by CPT and Local 335 in August of 1977. This agreement, which covered the period from January 1, 1976 to August 31, 1978, provided pension benefits for those employees who attained the age of 65. However, the agreement also provided special early retirement benefits to employees under the age of 65. This special early retirement benefit was available to certain long term employees of CPT "whose status as an employee [was] terminated by reason of a permanent shut down of a plant, department or subdivision...". Pension Agreement Article XXX, Section II.

The right of employees to receive these pension benefits was also limited by Section II, paragraph 6, of the Pension Agreement, which provided that:

*Adjustments For Severance Payments, Etc.* If any pensioner is or shall become entitled to or shall be paid any discharge, liquidation or dismissal or severance allowance or payment of similar kind by reason of any plan of the Company, or in respect of which the Company shall have directly or indirectly contributed, ... then the total amount paid or payable to him in respect of any such allowance or payment may, in the discretion of the [Pension] Board, be deducted from the amount of any pension to which such pensioner would otherwise be entitled under this Agreement upon retirement; ....

This section of the Pension Agreement was modeled after pension agreements used by major steel corporations at their operations in the Franklin area.

In the spring of 1978, CPT began to consider termination of its operations at the Franklin machine shop. Although local CPT officers; including defendants Miller, Dankesreiter and Fisher, recommended the closing of this facility, the decision to close was ultimately made by CPT's management in New York. This decision was finally made in May 1978.

Following this decision CPT officers at the Franklin plant began to make plans for the termination of all activities at that facility. An important part of these plans involved determining the rights of CPT employees to severance pay and/or pension benefits. In this connection the Pension Board—consisting of Mr. Miller, Dankesreiter and Fisher—met on several occasions to consider the proper manner in which to disburse pension funds. At this time the Pension Board decided that any individuals who were to be terminated who were eligible for special early retirement pensions should receive those pensions. The Board concluded, however, that termination severance pay should be deducted from this special early retirement benefit in all cases.

The Board members took this action because they believed that the payment of both severance and special early retirement constituted a duplication of benefits. Such duplication, in the Board's view, was prohibited under the Collective Bargaining Agreement. In reaching this conclusion the Board members also examined industry practice in the steel industry, since their Pension Agreement was modeled after the

agreement used by "big steel". The Board members were informed that this offset of severance and special early retirement was consistent with the practice of "big steel".

In June of 1978 CPT informed Local 335 and each of the affected employees, including plaintiffs, of its decision to deduct severance pay from special early retirement benefits. As required by ERISA this notice was provided to the employees in writing. Local 335 protested this decision by the Board and requested that the Board reconsider its decision. On June 21, 1978, after reconsideration, the Board declined to alter its position with respect to this deduction. This lawsuit followed.

## II. DISCUSSION

■ It is clear that the members of the Pension Board, as Trustees of the Pension Fund, are obliged to administer the fund solely in the interest of its beneficiaries. 29 U.S.C. § 1104. In fulfilling this obligation, however, the trustees are not constrained from exercising their best independent judgment. Quite the contrary, in this case, both ERISA and the Pension Agreement vest the Trustees of the Pension Fund with broad discretion in determining how monies should be disbursed from that fund. Because the trustees are vested with such broad discretion the role of this court in reviewing a denial of pension benefits is quite limited. We are not free to substitute our own judgment for that of the Pension Board members. Rather we must simply determine whether the decision of the trustees was in any way arbitrary or capricious. If the actions of the trustees in determining pension eligibility are not arbitrary or capricious then we must confirm those actions. *See, e.g., Fine v. Semet,* 514 F.Supp. 34 (S.D.Fla.1981); *Weeks v. Coca-Cola Bottling Co. of Arkansas,* 491 F.Supp. 1312 (E.D.Ark.1980); *Cawley v. NMU Pension & Welfare Plan,* 457 F.Supp. 301, 303 (S.D.N.Y.1978).

■ Moreover, in reviewing the decisions of Pension Trustees we recognize that the trustees and this court are bound by the language of the pension agreement, unless that language is clearly inconsistent with the policies underlying ERISA. *Blackmar v. Lichtenstein,* 603 F.2d 1306 (6th Cir. 1980).

In this case the plaintiffs argue that the decision of the trustees to deduct severance pay from pension benefits was improper for three reasons. First, according to the plaintiffs that decision reflects an improper conflict of interest on the part of the pension board members. These board members are all management officials in CPT and had some part in the decision to close the Franklin facility. By deducting severance pay from pension benefits these board members were able to effect a financial saving for CPT. Therefore, plaintiffs argue that the actions of these board members reflect an improper bias in favor of CPT.

Second, plaintiffs contend that the trustees abdicated their fiduciary responsibilities by establishing a *per se* rule, requiring deduction of severance pay from special early retirement in all cases. To support this argument the plaintiffs point to Section II of the Pension Agreement which provided that the Board may, in its discretion, require such a deduction. According to the plaintiffs this provision contemplated an individualized consideration of each pension claim. Since no such individualized consideration was given plaintiffs contend that the trustees' decision must be overturned.

Finally, the plaintiffs contend that the Board did not provide affected employees with adequate notice of its decision to deny full pension benefits.

■ We reject all of these arguments. Turning first to the question of conflict-of-interest, it is clear that no inherent conflict exists in this case simply because officers of CPT acted as trustees of the pension fund. In fact, ERISA specifically contemplates such an arrangement. 29 U.S.C. § 1108(c)(3) states that: "nothing in . . . this title shall be construed to prohibit any fiduciary from—(3) serving as a fiduciary in addition to being an officer, employee,

agent or other representative of a party in interest." See also, *Blackmar v. Lichtenstein*, 468 F.Supp. 370, 374 (E.D.Mo.1979), *affd.* 603 F.2d 1306 (6th Cir. 1980). Thus, the dual position held by these trustees does not, by itself, invalidate their actions.

Nor is there any evidence in this record of actual bias by the trustees in making their decision to offset benefits. In defining the scope of a trustee's fiduciary duties ERISA essentially codifies the existing common law of trusts. U.S.Code Cong. & Ad.News 4639 at 4649–50, 5186–87 (1974). Under the common law a trustee owed his undivided loyalty to the trust. Thus, the trustee was obliged to avoid any self-dealing and to refrain from using trust property to his personal advantage. See generally, 76 Am.Jur.2d, *Trusts*, § 315–324.

 However, while the standards imposed on trustees at common law are very strict they are not absolute. Quite the contrary, it is recognized that an absolute standard would be impractical in its application. Accordingly, it has been held that mere attenuated or hypothetical conflicts of interest do not necessarily invalidate good faith decisions made by a trustee. See, *Phelan v. Middle States Oil Corp.*, 220 F.2d 593, 604 (2d Cir. 1955); *In re: Flagg's Estate*, 365 Pa. 82, 73 A.2d 411 (1950). This is particularly true when the potential conflict is apparent from the face of the trust instrument itself. *Clayton v. James B. Clow & Sons*, 212 F.Supp. 482 (N.D.Ill.1962) *aff'd* 327 F.2d 382 (7th Cir. 1964); *In re Steele's Estate*, 377 Pa. 250, 103 A.2d 409 (1955).

In this case we feel that the trustees have acted in good faith in making their decision to deduct severance pay from pension benefits. In their testimony all of the Pension Board members indicated that they made the decision to deduct severance pay in order to avoid duplication of severance allowances. Such duplications are clearly prohibited by the Collective Bargaining Agreement. Moreover, the Pension Agreement specifically authorizes the Board to make deductions to avoid duplication of severance benefits. Thus the action of the trustees was within their authority under the Pension Agreement.

Furthermore, the trustees' conclusion that full severance and special early retirement constituted a double recovery seems entirely reasonable. Under the Pension Agreement the special early retirement pension is defined a benefit given to "an employee [who] is terminated...". Therefore, by definition this pension is a type of severance allowance. The Collective Bargaining Agreement unambiguously provides that: "Severance allowance shall not be duplicated for the same severance, whether the other obligation arises by reason of contract, law or otherwise." Therefore, the Board members could quite reasonably have concluded that payment of full severance and special early retirement would violate the Collective Bargaining Agreement.

Moreover, we note that the Pension Board referred to the practice of "big steel" in making their decision to deduct severance pay. Only after being informed that "big steel" deducted severance from early retirement did the Board conclude that it too would make such a deduction. Therefore the Board's decision was consistent with both the text of the applicable agreements and general industry practice.

As for the plaintiffs' claimed conflict of interest we feel that there are two problems with this argument. First, the potential conflict was apparent on the face of the pension agreement. That agreement expressly provides for management of the trust fund by a Board comprised "of such members from management as may be determined from time to time by the Company." Thus the pension agreement itself creates the conflict complained of by the plaintiffs. Second we feel that this alleged conflict it is too hypothetical to justify disturbing the Board's decision. CPT is a large industrial concern. It has net earnings of $21,000,000 and annual pension expenses of $8,000,000. The decision in this case to deduct severance pay from early retirement pensions results in an annual savings for CPT of $8,834, or a total savings of $63,192 over the full term of the Pension Agreement. Therefore, the impact of this decision on CPT is, at best, negligible.

Because the action taken by the Board is consistent with the contract and industry practice; and because that action was taken in good faith we will not allow the plaintiffs' speculative assertion of a conflict of interest to disturb the Pension Board's decision.

■ Nor do we feel that the trustees improperly abdicated their fiduciary responsibilities when they established a *per se* rule requiring deductions from pension benefits in all cases. Plaintiffs' argument on this issue misses the point. Admittedly the board members are given discretion in making the decision to deduct severance benefit. However adopting a *per se* rule requiring such deductions in all cases is not an abdication of discretion. It is simply one way of exercising that discretion. Although this *per se* rule might be wooden in its application, there is nothing in the pension agreement requiring individualized consideration of each pension claim. In fact there is a very real danger inherent in the individualized pension review urged by the plaintiffs. This case-by-case review would necessarily inject a subjective element into the Board's decision making process. It could also lead to inconsistent results and claims of arbitrariness. Because of these dangers we cannot find anything improper or unfair about the Board's decision to uniformly require a deduction of severance pay from early retirement pensions.

■ Finally, we reject plaintiffs' argument that the notice sent by CPT to the affected employees was inadequate. 29 U.S.C. § 1133(1) requires that "every employee benefit plan shall—(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant...". In this case CPT sent notices to all affected employees explaining that severance allowances would be deducted from pensions. This notice, we feel, was clearly sufficient to meet the requirements in the Act. In fact the action of Local 335 in promptly requesting reconsideration of this decision clearly demonstrates that the impact of the company's action was readily understood by the employees.

An appropriate order will issue.