2008 UT 42

**Kay W. EAGAR, Plaintiff and Appellant,**

v.

**Ray BURROWS, Ronald Burrows, Linda Davis, Arthur Kiisel, Julia Rodgers, and Florence Webster, Defendants and Appellees.**

No. 20061011.

Supreme Court of Utah.

July 11, 2008.

Michael A. Jensen, Salt Lake City, for plaintiff.

Wesley D. Hutchins, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Ray Burrows, acting under a durable power of attorney for asset management, gifted the personal property of his stepmother, Ida Burrows, to her children and stepchildren prior to her death. Following Ida's death, Kay Eagar, Ida's daughter, brought suit to compel the stepchildren to return the property to her late mother's estate for distribution according to the terms of Ida's will. The district court granted summary judgment in favor of the stepchildren, holding that the power of attorney granted broad authority to gift or otherwise distribute personal property. On appeal, we must decide (1) whether the power of attorney granted Ray the authority to gift Ida's personal property before she died and (2) whether in gifting the property, Ray breached his fiduciary duty to Ida. We conclude that the power of attorney granted Ray the authority to gift the personal property and that he did not breach his fiduciary duty.

## BACKGROUND

¶ 2 The parties do not dispute the material facts. Ida and Ralph Burrows were married for more than forty-three years and together raised eight children, although they had none together. Each brought children from prior marriages into the family. Ida brought her

two children, Kay Eagar and William Whiteley. Ralph brought his two children, Ray and Ron Burrows, as well as four stepchildren from a previous marriage, Linda Davis, Arthur Kiisel, Julia Rodgers, and Florence Webster (these six individuals will be referred to collectively as "the stepchildren"). Although neither Ida nor Ralph adopted the other's children or stepchildren, they considered all eight children their sons and daughters.

¶ 3 On October 2, 1997, Ida and Ralph executed a series of personal estate documents. These included Ida's will; Ralph's will; Ida and Ralph's joint trust (the "Burrows Trust"); Ida's limited power of attorney in Kay for medical decisions; and Ida's durable power of attorney in Ray for asset management, which also included a medical power of attorney. Taken together, these documents formed Ralph and Ida's integrated estate plan. But only Ida's durable power of attorney and will are at issue in this case.

¶ 4 The parties dispute to whom Ida's personal property should pass according to the two documents. In her will, Ida directed that all "tangible personal property" in her estate be given as set forth in a written memorandum that she should leave. Ida left no memorandum. She further directed in her will that "[t]he remainder of my tangible personal property, or all of such property in the event that I leave no memorandum, I give and bequeath to my personal representatives, to be divided among my issue by my personal representatives, in their sole and absolute discretion." "Issue" is defined in Utah Code section 75-1-201 as a descendant child who could take under intestate succession but "excludes any person who is only a stepchild." [1] Thus, Ida's "issue," as defined by this section, are Kay and William. Finally, Ida directed in her will that any remaining assets of the estate be "poured over" into the Burrows Trust, which names all eight children as "beneficiaries" in equal shares.

¶ 5 The second document affecting Ida's personal property is her durable power of attorney for asset management, which names Ray as her attorney-in-fact. The power of attorney grants Ray broad authority to act on Ida's behalf and gives him control over Ida's property, both real and personal,

> to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods, wares, and merchandise, [choses] in action, and other property in possession or in action, and to make, do, and transact all and every kind of business of what nature or kind soever, including all business related to accounts in financial institutions.

The power of attorney further authorizes Ray "to gift property, whether real or personal, or sums of money or any other items" belonging to Ida.

¶ 6 Ralph passed away on September 23, 2002. Around the time of his death, Ida was hospitalized and shortly thereafter was moved to a long-term care facility. During this period, the children faced numerous decisions relating to Ida's care and the management of her assets and personal property. The family, having determined that Ida could no longer sustain herself at home and would need to stay permanently in a long-term care facility, needed to decide what to do with the home and her personal property. According to the stepchildren, when discussing Ida's personal property, they considered the following factors: "the pros and cons of spending money to place the personal property into storage," "the pros and cons of leaving the personal property in the home untouched and open to possible theft, damage, or loss," and "the pros and cons of paying utilities and upkeep for an unoccupied home, depleting assets of the estate, when it was clear that Ida's health would not permit her to remain in the home alone."

¶ 7 Acting under the power of attorney granted to him by Ida, Ray decided to conduct a drawing for the personal property. Each of the eight children, including Kay, drew numbers and then, in turn, selected items from Ida's personal property that they wanted. Most of the items selected were personal effects of modest, mainly sentimental value. According to the stepchildren, Ray gifted the items "with the understanding

---

1. Utah Code Ann. § 75-1-201(5), (9), (25) (Supp. 2003).

that wherever Ida eventually resided, that if she wanted items returned to her, they would be returned for her use until her passing." At Ida's death, these items would be returned to the children who selected them.[2]

¶ 8 At the time of the drawing, Kay claims that she did not agree with the decision and objected to distributing Ida's property. Kay, who did not consider the items to be legitimate gifts, paid $600 in consideration for the items she selected for herself and her brother William. She requested that the stepchildren follow suit, but none of them did.

¶ 9 Having gifted these personal property items, Ray sold Ida's more significant assets, including her house, car, truck, and lawn mower. He then deposited the proceeds into the Burrows Trust for Ida's care and well-being.

¶ 10 Ida remained in the long-term care facility until her death on September 19, 2005. Kay became the court-appointed personal representative for Ida's estate. Because she believed that, based on Ida's will, the personal property should go to Ida's issue—Kay and her brother William—Kay immediately requested that all of the items distributed by Ray be returned to the estate. The stepchildren declined to comply with her request, at which point Kay, acting as personal representative of the estate, sued to compel them to return the items.

¶ 11 Kay filed a motion for partial summary judgment to determine whether Ida's estate included the personal property items. She argued that, as personal representative, she alone had legal authority to control the disposition of Ida's personal property. In response, the stepchildren counterclaimed, contending that the lawsuit was frivolous and asserting other causes of action related to Kay's handling of trust funds received by Ida's estate that were to be poured over into the Burrows Trust. The stepchildren also filed a cross-motion for summary judgment, arguing that Ray was acting under the durable power of attorney for asset management executed by Ida. Kay responded that the power of attorney contains only a "minor reference" to gifting and that the terms of Ida's will—giving all remaining personal property to her "issue"—should limit any distribution of her personal property even before her death. She asserted that Ray breached his duty of loyalty to Ida by gifting her personal property in a manner that did not benefit Ida or conform to the unambiguous intent expressed in her will. Further, she argued, Ray breached his fiduciary duty by engaging in self-dealing because he personally benefitted from the gifts.

¶ 12 In its Order and Judgment, the district court granted summary judgment in favor of the stepchildren, holding that the durable power of attorney granted Ray authority "to dispose of Ida Burrows's personal property essentially in any manner he deemed appropriate within the limitations imposed by any fiduciary duties that might be applicable." The court denied Kay's motion for partial summary judgment and instead granted the stepchildren's cross-motion for summary judgment. On the question of fiduciary duty, the court reasoned that there was no breach because "[t]he manner in which [Ray] disposed of the personal property was not inherently inequitable, or self-serving, but rather sought to deal with all the children equally, as Ralph and Ida Burrows clearly intended pursuant to and consistent with their overall estate plan." The stepchildren voluntarily dismissed their counterclaims without prejudice to expedite the conclusion of the litigation. Kay appealed the grant of summary judgment against her. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

---

2. Kay contended below that this understanding raises questions as to the status of the personal property at Ida's death. She claimed that it was not gifted but merely loaned and, therefore, was still part of Ida's estate. The district court ruled that "the personal property distributed by [Ray] constituted gifts that vested at the time of the distribution, and the informal undocumented agreement that items gifted to others might still be made available for Ida Burrow's use during her lifetime was an accommodation to a mother they all cared for." Kay did not appeal the ruling that the gifts vested at the distribution. Instead, she appeals the ruling that the power of attorney granted Ray authority to make the gifts. Because Ida did not appeal the ruling as to the vesting of the gifts of personal property, the issue is not material to our judgment.

## STANDARD OF REVIEW

¶ 13 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] When reviewing a grant of summary judgment, we accord no deference to the district court's conclusions of law but review them for correctness.[4]

## ANALYSIS

¶ 14 We will first review the burden and obligations of each party on summary judgment. Then we will discuss whether the durable power of attorney executed by Ida granted Ray authority to gift Ida's personal property. Finally, we will discuss whether Ray breached his fiduciary duty. We conclude that the durable power of attorney granted Ray the authority to gift Ida's personal property and that he did not breach his fiduciary duty.

## I. BURDEN OF PROOF ON MOTION FOR SUMMARY JUDGMENT

¶ 15 In this case, Kay had the burden of establishing each element of her claim that Ray lacked the authority to gift and her claim that Ray breached his fiduciary duty.[5] In moving for summary judgment on these claims, the stepchildren had

> the burden of presenting evidence to demonstrate that no genuine issue of material facts exists and that judgment as a matter of law is proper. However, once the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact.[6]

We will affirm the grant of summary judgment in favor of the stepchildren if it appears that "even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law."[7]

## II. AUTHORITY TO GIFT UNDER THE POWER OF ATTORNEY

¶ 16 The district court concluded that the durable power of attorney expressly granted Ray authority to gift Ida's personal property. We agree. In determining whether Ray held such authority, however, we must address both the language of the power of attorney and Kay's assertion that the terms of Ida's will limited Ray's authority under the power of attorney. We conclude that the power of attorney clearly gave Ray authority to gift Ida's personal property and that the will is irrelevant to that grant of authority. Because there is no genuine issue of material fact as to Ray's authority under the power of attorney, the district court properly granted summary judgment in favor of the stepchildren.

### A. The Language of the Power of Attorney Explicitly Authorizes Ray to Gift Ida's Personal Property

¶ 17 The durable power of attorney expressly granted Ray authority to gift Ida's personal property. The two-page instrument gives Ray broad authority over Ida's assets and personal property. It authorizes Ray "in any and every way and manner [to] deal in and with goods, wares, and merchandise, [choses] in action, and other property in possession or in action, and to make, do, and transact all and every kind of business of what nature or kind soever."

¶ 18 More specifically, the power of attorney expressly authorizes Ray "to gift property, whether real or personal." Kay contends that the power to gift property is a single "minor reference" and should not be given full effect. She offers no argument as to what makes this explicit grant of authority

3. Utah R. Civ. P. 56(c).

4. *Wayment v. Clear Channel Broad., Inc.,* 2005 UT 25, ¶ 15, 116 P.3d 271.

5. *Orvis v. Johnson,* 2008 UT 2, ¶ 10, 177 P.3d 600.

6. *Waddoups v. Amalgamated Sugar Co.,* 2002 UT 69, ¶ 31, 54 P.3d 1054 (citations omitted); *accord* Utah R. Civ. P. 56(e).

7. *Themy v. Seagull Enters.,* 595 P.2d 526, 529 (Utah 1979).

"minor" or why the power to gift need be referenced more than once to be effective.

¶ 19 In her brief, Kay cites to two Utah cases for the proposition that courts should strictly construe power of attorney instruments. But these cases only confirm our conclusion that Ray was authorized by the power of attorney to gift Ida's property. First, in *Kline v. Utah Department of Health*, the court of appeals described power of attorney instruments as follows: "The scope of the authority so conferred may, by the terms of the instrument itself, be general or limited, but the instrument creating this agency relationship is to be strictly construed." [8] Even under the narrowest reading, the power "to gift property, whether real or personal" is explicit and clear; it granted Ray the authority to gift Ida's personal property.

¶ 20 Second, in *Huntsman v. Huntsman*, we held that the power of attorney at issue "did not authorize a gift . . . for a mere nominal consideration." [9] We concluded that whether an attorney-in-fact has power to convey the principal's property for nominal consideration must be "deducible from the language or manifest intent of the instrument." [10] But the power of attorney in *Huntsman* granted no specific authority to gift the principal's real or personal property.[11] The power of attorney executed by Ida is clearly distinguishable because, unlike the instrument in *Huntsman*, the authority to gift her personal property is plainly "deducible from the language or manifest intent of the instrument." [12]

¶ 21 Kay also points to Utah Code section 75–5–503, which became effective after the events at issue in this case, to argue that public policy requires that the instrument "expressly authorize[ ]" power to "make or revoke a gift of the principal's property." [13]

But, as we have concluded, the power of attorney in Ray did "expressly authorize" him to gift Ida's personal property. Even if section 75–5–503 were controlling in this case, the outcome would be the same. Thus, the power of attorney granted Ray the authority to gift Ida's personal property.

### B. Ida's Will Is Irrelevant to the Grant of Authority in the Power of Attorney

¶ 22 Ida's will does not limit the authority granted by the power of attorney because it does not control the disposition of her assets during her lifetime. While they were signed on the same day, the power of attorney and will are two separate instruments that control the disposition of Ida's personal property during separate and distinct periods of time. The power of attorney controlled while Ida was alive; the will controlled upon her death. "A 'will' is the legal declaration of a person's intentions, which he or she wills to be performed after his or her death. It is an instrument by which a testator makes a disposition of real and personal property, to take effect *after his or her death*." [14]

¶ 23 Ida was still alive when Ray gifted her personal property. Because the power of attorney controlled disposition of Ida's personal property while she was alive, his authority to do so was derived from that instrument and not limited by the will. The power of attorney, which granted Ray authority to gift Ida's property, did not reference the will. It did not purport to limit the authority to gift by referencing the will. Therefore, the identification for disposition of the same property in the will does not limit the grant of authority in the power of attorney; it is irrelevant in this case. The district court correctly concluded that there was no genu-

---

8. 776 P.2d 57, 61 (Utah Ct.App.1989).

9. 56 Utah 609, 192 P. 368, 374 (1920).

10. *Id.* at 370.

11. *Id.* The general terms of the power of attorney in *Huntsman* named the agent as "my true and lawful attorney, for myself and in my name, place, and stead, and for my use and benefit." *Id.* The court held that this language was not specific and did not "confer [ ] power to give the

property away, or convey it for a mere nominal consideration." *Id.*

12. *Id.*

13. Utah Code Ann. § 75–5–503 (Supp.2007).

14. 95 C.J.S. *Wills* § 1 (2001) (citations omitted) (emphasis added).

ine issue of material fact as to Ray's authority to gift Ida's personal property.

## III. FIDUCIARY DUTY

¶ 24 Having determined that the power of attorney granted Ray authority to gift Ida's personal property, we now address whether Ray breached his fiduciary duty. The district court granted summary judgment on this issue to the stepchildren, concluding that Ray did not breach his fiduciary duty, and we agree. We will first discuss Kay's argument that, even if Ray had authority to make gifts, he breached his fiduciary duty of loyalty because the gifts he made did not benefit Ida. Second, we will discuss Kay's argument that Ray breached his fiduciary duty by self-dealing because he benefitted as a recipient of some of the gifts. We agree with the district court that summary judgment in favor of the stepchildren was proper in this case because there was no genuine issue of material fact as to breach of fiduciary duty.

*A.  Ray Met His Burden on Summary Judgment by Showing That There Was No Genuine Issue of Material Fact on the Issue of Whether He Breached His Fiduciary Duty of Loyalty*

■ ¶ 25 A power of attorney creates a principal-agent relationship.[15] Generally, "[a]n agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship."[16] The Restatement (Third) of Agency explains that "[a]lthough an agent's interests are often concurrent with those of the principal, the general fiduciary principle requires that the agent subordinate the agent's interests to those of the principal and place the principal's interests first as to matters connected with the agency relationship."[17] In the context of trusts, we have held that "[t]he duty of loyalty requires a trustee to act only for the benefit of the beneficiaries and to exercise prudence and skill in administering the trust."[18]

**15.**  3 Am.Jur.2d *Agency* § 21 (2007).

**16.**  Restatement (Third) of Agency § 8.01 (2006).

**17.**  *Id.* § 8.01 cmt. b.

■ ¶ 26 In moving for summary judgment, the stepchildren demonstrated that Ray's conduct did not violate his duty of loyalty to Ida because the gifts benefitted Ida. In addition to the emotional gratification inherent in giving to loved ones, Ida benefitted in a strictly financial sense because the gifts reduced the costs related to storage and upkeep of her personal property. Ray consulted with the other children concerning Ida's personal property, and they discussed various alternatives, including paying for storage, keeping the items in her home, and paying for utilities and upkeep for a home to which she would never return. As a result of these discussions and based on his reasonable belief that Ida wanted all eight children to receive her personal property, Ray conducted a drawing to distribute the items among the eight children. Clearing the home to be sold and avoiding the risk of loss and the costs of storage and upkeep benefitted Ida and her estate financially. The proceeds from the home sale were then deposited in the Burrows Trust for her maintenance and care, which also benefitted her.

¶ 27 Ray and the other stepchildren agreed that these items would be made available if Ida desired to have them with her in the long-term care facility. The district court characterized his actions as "fair and equitable" and consistent with the overall estate plan. Ida benefitted from a fair and equitable distribution of her personal property among her children and stepchildren.

¶ 28 This evidence presented by the stepchildren sufficiently demonstrated that there was no genuine issue of material fact and that the stepchildren were entitled to summary judgment on this issue. The burden then shifted to Kay to raise a genuine issue of material fact showing why summary judgment was not appropriate. Kay, in opposing summary judgment, did not offer an alternative treatment of the property that might have benefitted Ida more.

¶ 29 Instead, Kay attempted to raise a genuine issue of material fact by asserting

**18.**  *Nat'l Parks & Conservation Ass'n v. Bd. of State Lands,* 869 P.2d 909, 918 (Utah 1993).

that Ray breached his duty of loyalty by (1) gifting the property to the stepchildren because Ida unambiguously expressed a contrary intent for the disposition of her personal property in her will and (2) self-dealing because Ray benefitted from the gifts by participating in the distribution. We conclude that Kay's assertions failed to raise an issue of material fact and that Ray did not, as a matter of law, breach his fiduciary duty. We will address both of Kay's assertions in the order listed.

### B. Kay Presented Insufficient Evidence to Raise a Genuine Issue of Material Fact That Ray Acted Contrary to Ida's Intent

¶ 30 The only evidence Kay offered to show that Ray acted contrary to Ida's intent is Ida's will. Ida's will provided that any personal property in her estate would, in the absence of a memorandum directing otherwise, be distributed at the sole discretion of her personal representative to her "issue," meaning Kay and William as defined by Utah Code section 75–1–201.[19] Kay essentially argued that Ray's actions under the power of attorney violated his fiduciary duty because the property was distributed evenly among the children and stepchildren—a different disposition of property than under the will. But we have already concluded that the will in this case controlled the disposition of Ida's personal property only after her death and thus does not inform our analysis of Ray's actions while she was still alive. Moreover, the power of attorney under which the personal property was distributed was part of an integrated estate plan, which provided for gifts of property both before and after Ida's death. Kay offered no plausible theory as to why the will should control over the power of attorney, particularly when the property was gifted while Ida was still alive. Kay, unable to offer any evidence that the gifts were contrary to Ida's intent, did not raise a genuine issue of material fact with this assertion.

### C. Kay Failed to Allege That Ray Did Anything That Amounts to Self–Dealing

¶ 31 Kay next asserted that Ray breached his fiduciary duty by self-dealing because Ray benefitted from the gifts he received as part of the distribution. We agree with the district court that, even assuming the facts alleged by Kay, Ray did not engage in self-dealing.

¶ 32 Black's Law Dictionary defines self-dealing as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty."[20] In the trustee context, we have said that a trustee engages in self-dealing if he " 'place[s] himself in a position where it would be for his own benefit to violate his duty to the beneficiaries.' "[21] Kay's allegation of self-dealing in this context is unusual in that Ray was not merely given authority and charged with the ongoing management of Ida's assets but was given explicit authority to gift Ida's property prior to her death. Cases of self-dealing typically involve corporate fiduciaries or trustees of income-producing trusts in which the fiduciaries are charged with preserving and investing the property that they manage.[22] In those contexts, transactions that place the fiduciary in a position inconsistent with the corporation or trust because of the fiduciary's competing self-interest are prohibited as self-dealing.[23] Such transactions are prohibited without regard to the adequacy of consideration, the honesty of intent, or the lack of fraud.[24] But this traditional analysis of self-dealing assumes that the object of the transaction and fiduciary relationship at issue is to *preserve* the monetary value of the estate. The analysis is inapplicable when the object of the transactions at issue and indeed one of the purposes of the fiduciary relationship is to

---

19. Utah Code Ann. § 75–1–201(5), (9), (25) (Supp.2007).

20. *Black's Law Dictionary* 1390 (8th ed.2004).

21. *Wheeler v. Mann*, 763 P.2d 758, 760 (Utah 1988) (quoting IIA Scott, *Trusts* § 170, at 311 (4th ed.1987)).

22. *E.g., id.; see also In re Estate of Harrison*, 745 A.2d 676, 680 (Pa.Super.Ct.2000); *Steele Estate*, 377 Pa. 250, 103 A.2d 409 (1954).

23. *Harrison*, 745 A.2d at 680.

24. *Id.*

dispose of property in anticipation of the principal's death.

 ¶ 33 This is not to say that, in cases of testamentary distribution, fiduciary duties of loyalty do not apply to prevent fiduciaries from improperly benefitting from prohibited transactions. But we agree with the Pennsylvania Supreme Court in *Steele Estate,* which held that "the doctrine of self-dealing does not apply where the testator knowingly placed his trustee or trust beneficiary in a position which he knew might conflict with the interest of the trust or beneficiaries thereof, and gave her the power to act in that dual capacity."[25] The *Steele Estate* court reasoned that " 'the challenged action is within the provisions of the will.... The conferred right to exercise all these plenary powers of ownership necessarily modified or displaced the otherwise absolute limitation against self-dealing.' "[26]

¶ 34 Such is the case here. The power of attorney gave Ray plenary authority, including, as noted above, the power to gift Ida's property. In deciding to gift the property, Ray did not "place himself in a position where it would be for his own benefit to violate his duty" to Ida. Rather, in gifting the property, he acted in a manner consistent with the power of attorney Ida had given him. The mere fact that Ray received some benefit does not amount to self-dealing, particularly when Ray could be expected to benefit as one of Ida and Ralph's eight children. While it is true that a gift for which no consideration is paid rarely benefits the giver in a strictly financial sense, Ray's actions gifting the personal property clearly benefitted Ida both financially and in other ways as well. It benefitted her financially by clearing the house to be sold and avoiding the costs of storage, upkeep, and risk of loss. And the gift was a benefit to her because of the emotional value inherent in a parent's gift to her children. We agree with the district court that even according to the facts as contended by Kay, there is no genuine issue

of material fact and the stepchildren are entitled to judgment as a matter of law.

## CONCLUSION

¶ 35 The power of attorney expressly granted Ray authority to gift Ida's personal property prior to her death. In gifting her property, Ray did not breach his fiduciary duty of loyalty to Ida. Because there is no genuine issue of material fact, the district court properly granted summary judgment to the stepchildren. Affirmed.

¶ 36 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

---

25. 377 Pa. 250, 103 A.2d 409, 413 (1954); *accord In re Krause Estate,* 19 Mich.App. 155, 172 N.W.2d 468, 471 (1969) ("[T]he rule of undivided loyalty may be relaxed by appropriate language in the trust instrument."); *see also* 90 C.J.S. *Trusts,* § 248(e).

26. *Steele Estate,* 103 A.2d at 413 (alteration in original) (quoting *Flagg Estate,* 365 Pa. 82, 73 A.2d 411, 414–15 (1950)).